## In re STENGER.

(District Court, E. D. Michigan, S. D. August 12, 1922.)

### No. 5353.

1. Bankruptcy ⚖︎424—"Willful and malicious injuries," within statute describing debts from which a discharge would be a release within Bankruptcy Act, defined.

Under Bankruptcy Act, § 17 (2), being Comp. St. § 9601, providing that a discharge in bankruptcy shall release a bankrupt from all provable debts, except such as are liabilities for "willful and malicious injuries to the person or property of another," an injury, to be "willful and malicious," need not involve special or actual malice, but may involve merely a willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Willful and Malicious Injury.]

2. Bankruptcy ⚖︎424—Insurance company's claim against bankrupt agent for conversion of funds not released by bankrupt's discharge, being a liability for "willful and malicious injuries."

Bankrupt insurance agent was not entitled to enjoin prosecution in state court of insurance company's action against him for conversion of funds collected by him for the company, under Bankruptcy Act, § 11a (Comp. St. § 9595), providing for the stay of such an action, where founded on a claim from which a discharge would be a release; such a claim for converted funds not being one from which a discharge would be a release, under section 17(2), being Comp. St. § 9601, providing that a discharge shall release bankrupt from provable debts, except such as are liabilities for "willful and malicious injuries to the person or property of another."

In Bankruptcy. In the matter of John A. Stenger, bankrupt. Petition by bankrupt to stay certain proceedings pending against him in the state court at the time of the filing of petition in bankruptcy. Petition denied.

Yerkes, Simons & Goddard, of Detroit, Mich., for bankrupt.

Sanders & Wanamaker, of Detroit, Mich., for respondent creditor.

TUTTLE, District Judge. This is a petition by the bankrupt asking this court to stay certain proceedings pending against him in a state court at the time of the filing of his voluntary petition in bankruptcy in this cause.

It is alleged by petitioner that on November 21, 1921, a judgment was rendered against him in the sum of $812.33 in the circuit court for the county of Wayne (the state court just referred to) in an action theretofore brought against him in said court by one of his creditors, the Farmers' Fire Insurance Company, a Pennsylvania corporation, in an action of trespass on the case. The declaration in said action alleged that said bankrupt (the defendant in said action), being the duly authorized agent of said insurance company (the plaintiff in said action), had solicited and procured certain contracts of insurance with various persons, under which certain insurance policies had been issued by said insurance company to said persons; that said bankrupt had, as

such agent, collected the sum of $1,086.82, being the amount of the premiums on said policies; that there was due to said bankrupt as commissions on said policies $264.89, and for postage the further sum of $4.60, leaving a balance due to said plaintiff insurance company amounting to $812.33; that a reasonable time had elapsed for the payment of said money to said plaintiff, but that said defendant, although often requested so to do, had failed to pay or to account for said sums of money collected as said premiums and had taken and converted the same to his own use and benefit.

The petition of the bankrupt now pending alleges that an execution has been issued on said judgment against the body of said petitioner (the bankrupt), and that said execution is in the hands of the sheriff of said county, who threatens to arrest and confine petitioner thereunder; that if said insurance company, through said sheriff, be allowed to proceed in said action as indicated, injury will be done to said petitioner, as he is unable to pay said judgment, and said insurance company will not grant him further time for such payment; that the only means of support for petitioner and his family is his salary as a wage-earner, and that if confined in jail through said body execution he will be unable to support his said family. Petitioner prays that further proceedings in the said action, and particularly the service of the said body execution, may be stayed for the time prescribed in the Bankruptcy Act, and that said insurance company and the said sheriff be restrained from any further proceedings in said action, and from serving or enforcing the said body execution until the further order of this court.

Petitioner invokes and relies upon section 11a of the Bankruptcy Act (Comp. St. § 9595), providing as follows:

"A suit which is founded upon a claim from which a discharge would be a release, and which is pending against a person at the time of the filing of a petition against him, shall be stayed until after an adjudication or the dismissal of the petition; if such person is adjudged a bankrupt, such action may be further stayed until twelve months after the date of such adjudication, or, if within that time such person applies for a discharge, then until the question of such discharge is determined."

It will be noted that it is only an action founded upon a "claim from which a discharge would be a release" that may be stayed under the section of the statute just quoted. Is an action founded upon a liability for a conversion by a person, to his own use, of money coming into his hands as the agent of another, a claim dischargeable in bankruptcy? The controlling section of the Bankruptcy Act is section 17 (Comp. St. § 9601). Subdivision (2) of that section provides that—

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts except such as * * * are liabilities for * * * willful and malicious injuries to the person or property of another."

[1] It is well settled that, in order to come within the "willful and malicious injuries" here mentioned, it is not necessary that an injury should involve special or actual malice, but, in the language of the United States Supreme Court in Tinker v. Colwell, 193 U. S. 473, 24 Sup. Ct. 505, 48 L. Ed. 754:

"A willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily caus-

es injury and is done intentionally, may be said to be done wilfully and maliciously, so as to come within the exception."

[2] While there was formerly some doubt and conflict as to whether a claim for the conversion by an agent of money or other property intrusted to his custody by or on behalf of the owner thereof is a willful and malicious injury within the meaning of section 17(2), and therefore dischargeable in bankruptcy, it is, in my opinion, now settled law that a claim based on a conversion such as that here involved is a willful and malicious injury, which claim, under section 17 (2), is not dischargeable in bankruptcy. McIntyre v. Kavanaugh, 242 U. S. 138, 37 Sup. Ct. 38, 61 L. Ed. 205; In re Keeler (D. C.) 243 Fed. 770; Baker v. Bryant Fertilizer Co. (C. C. A. 4) 271 Fed. 473; Covington v. Rosenbusch, 148 Ga. 459, 97 S. E. 78, 42 Am. Bankr. Rep. 400; Mason v. Sault, 93 Vt. 412, 108 Atl. 267, 44 Am. Bankr. Rep. 504. In McIntyre v. Kavanaugh, supra, it was contended by the bankrupt that a claim founded upon a conversion was dischargeable in bankruptcy, and many cases were cited in support of that contention. In deciding to the contrary, the Supreme Court said:

"To deprive another of his property forever by deliberately disposing of it without semblance of authority is certainly an injury thereto within common acceptation of the words. * * * But the argument is that an examination of our several Bankruptcy Acts and consideration of purpose and history of the 1903 amendment will show Congress never intended the words in question to include conversion. We can find no sufficient reason for such a narrow construction. And instead of subserving the fundamental purposes of the statute, it would rather tend to bring about unfortunate if not irrational results. Why, for example, should a bankrupt who had stolen a watch escape payment of damages, but remain obligated for one maliciously broken?"

This language is equally applicable to the present case; the only difference in the facts being that here money, instead of certificates of stock, belonging to another, were disposed of by the bankrupt without authority, in disregard of his duty, and against good morals, the effect being to wrongfully deprive the owner of his property intrusted to the custody of the bankrupt.

It is urged by petitioner that the conversion of property by a factor, broker, or other agent of the owner is dischargeable under section 17—

"where there is neither a technical trust in the inception of the contractual relation nor moral turpitude in the breach of it."

A close examination and analysis of the numerous authorities relied on in support of such contention discloses that, in so far as they seem at first favorable to petitioner, they are inapplicable to the present case because each of the decisions so cited was based upon either subdivision 4 of section 17 (which relates only to debts created by a bankrupt "by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity"), or upon a state of facts substantially different from those in the instant case and presenting different questions of law, or else was one of the many decisions (principally of state courts) overruled by the decision of the United States Supreme Court in McIntyre v. Kavanaugh, supra.

As, therefore, the action in the state court is one founded upon a claim not dischargeable in bankruptcy, and it does not appear that the

enforcement of the body execution in question will interfere in any way with the administration by this court of the bankrupt estate, the petition for such stay must be denied, and an order will be entered to that effect.