**UNITED STATES FIDELITY AND GUARANTY COMPANY, a Maryland corporation, Plaintiff,**

v.

**Harold D. TANNER, Defendant.**

**Civ. A. No. 9505.**

United States District Court
D. Colorado.

Jan. 8, 1968.

---

Richard W. Breithaupt, Denver, Colo., for plaintiff.

Donald E. LaMora, Colorado Springs, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

CHILSON, District Judge.

This matter came on for trial to the Court without a jury on December 28, 1967, upon an agreed Statement of Facts contained in the Second Amended Pre-Trial Order. The Court heard the argument of counsel, considered the written Briefs filed herein, and is now fully advised.

The Agreed Statement of Facts without the attached exhibits is as follows:

"That between October 29, 1948 and November 26, 1950, the Plaintiff executed as surety for Tanners, Inc. five separate United States Department of Agriculture Warehousemans Bonds, a copy of one of said Bonds is attached hereto as Exhibit 'A'; that the total face amount of the five Bonds was $181,500.00; that the printed portions of all five Bonds were identical to the printed portions of Exhibit 'A'.

"Under the terms of each Bond, Plaintiff was the surety, the United States Government was the obligee, and Tanners, Inc. was the principal. Tanners, Inc. was a Colorado corporation of which the Defendant, Harold Tanner was the principal stockholder. The Defendant, Tanner, executed in his individual capacity a contract application containing an indemnity agreement requiring him to indemnify Plaintiff for all losses it might suffer as a result of executing said Bonds. Said indemnity agreement was on the same printed form as the Warehousemans Bonds and a copy of said agreement is attached hereto as Exhibit 'B' hereof.

"In 1951 the defendant and Tanners, Inc. were sued jointly by the United States Government for the conversion of agricultural commodities in Civil Action No. 3507 in the United States District Court for the District of Colorado. The records of the aforementioned case are part of the records of this Court and may be judicially noted by this Court. The records of that case show that no answer was ever filed on behalf of Defendant and that while said Defendant was in default and not represented an Order dated October 18, 1954 was entered in part as follows:

"This matter having come on regularly for hearing on October 11, 1954, up-

on the claim of the United States of America to priority of payment from the assets of the estate herein, notice of said hearing having been given to all parties in interest as required by order of Court entered herein August 13, 1954, and as proved by Affidavit of Mailing duly filed; and the Court having considered the evidence; and none of the parties having appeared at said hearing except the plaintiff and the Receiver; and the Court having heard the statements of counsel and being fully advised, doth hereby make and enter the following:

"FINDINGS OF FACT:

1. The Receiver was appointed herein on March 29, 1951, with the consent of the defendants;

2. At the time of the appointment of said Receiver the said defendants, and each of them, had liabilities far in excess of their respective assets, and said condition has prevailed at all times throughout this receivership;

3. At the time of the appointment of the Receiver the defendants were indebted to the United States for quantities of agricultural commodities stored under contracts with the Commodity Credit Corporation, an agency of the United States of America, which said defendants had sold and converted to their own use;

4. On December 18, 1952, the claim of the United States of America against said defendants based upon the foregoing matters was duly determined herein in the amount of $1,096,662.27;

"CONCLUSIONS OF LAW:

1. By statute, the United States of America, as claimant against the the assets of an insolvent, has a right of priority of payment over all creditors of the insolvent except secured or lien creditors to the extent of the security or lien (31 U.S.C. 191);

2. By statute, the said priority has been extended and applied to Commodity Credit Corporation, the agency of the United States here involved (15 U.S.C. 714b(e));

3. Defendants Tanners, Inc. and Harold Tanner were, at the time of the appointment of the Receiver herein, and each of them has continuously thereafter remained, insolvent within the meaning of the statutes hereinbefore cited;

4. The priority so established in favor of the United States of America is superior to the priorities established by state law; wherefore,

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the claim of the United States of America herein shall be first satisfied out of the assets in the hands of the Receiver herein, subject to the payment of the expenses of the administration of the receivership herein, including fees and commissions, but with priority over the unpaid claims of all other creditors herein, as set forth in the Receiver's Action upon Claims, filed herein August 13, 1954.

Done in open Court this 18th day of October, 1954.

BY THE COURT:' "

"That Plaintiff filed a claim in such action for any loss it might suffer as a result of having written the aforementioned Bonds.

"In 1952 the United States Government and the Plaintiff entered into settlement negotiations of all claims the Government had against the Plaintiff as a result of the aforedescribed Warehousemans Bonds. As a result of such settlement negotiations Plaintiff paid the United States Government the sum of $125,000.-00 in 1952 and the United States Government released all claims it might have against the Plaintiff as the result of the Plaintiff having executed the aforementioned Bonds.

"On June 6, 1955, in Civil Action No. 3507, Judgment was entered in favor of the Commodity Credit Corporation, an

agency of the United States Government, and against Harold Tanner, the Defendant, in the sum of $1,085,034.31. At the same time the Court also entered a Judgment in favor of Plaintiff and against the Defendant, Harold D. Tanner, in the sum of $125,000.00; that a copy of said judgment is attached hereto as Exhibit 'C'.

"That on or about December 5, 1955 the Defendant executed a promissory note payable to Plaintiff in the principal amount of $130,000.00; that the local representative of Plaintiff who dealt with the Defendant and the Defendant were unaware of the Judgment entered in Civil Action No. 3507; that said Judgment in favor of Plaintiff and against Defendant has not been formally released or satisfied; that a copy of said note is attached hereto as Exhibit 'D' hereof; that on or before December 27, 1958 Defendant paid Plaintiff the sum of $45,000.00 on the obligation represented by said promissory note.

"That on or about December 27, 1958 Defendant executed the promissory note which is the subject matter of this action, Exhibit 'A' to Plaintiff's Complaint and Exhibit 'E' hereof; that on or about December 23, 1959 Defendant paid Plaintiff the sum of $2,533.21 due pursuant to Exhibit 'E'; that Defendant has made no other payments on said note.

"That Exhibits B, D and E hereof were prepared by Plaintiff or its attorneys.

"That the 'existing obligation' referred to in the fourth paragraph of Exhibit 'E' hereof arose out of some or all of the facts above set forth.[1]

"That on or about May 27, 1960 an involuntary petition in bankruptcy was filed against Defendant and he was subsequently adjudicated a bankrupt as of said date; that the claim of Plaintiff was duly included and scheduled by Defendant in said proceedings and notice of said proceeding as provided by law was given Plaintiff; that Plaintiff had actual notice of said proceedings; that no objections were filed to Defendant's discharge in bankrutpcy and that on January 21, 1964, Defendant was granted a discharge in bankruptcy of all debts and claims provable against his estate except such debts as are by Act of Congress excepted from the operation of a discharge in bankruptcy; that a copy of the Discharge of Bankrupt is attached hereto as Exhibit 'F' hereof; that the records and proceedings of said bankruptcy being Number 25955 may be judicially noted by the Court."

The questions presented are:

(a) Whether or not the Defendant's Discharge in Bankruptcy is a bar to this action; and

(b) If not, is the action barred by the Colorado Statutes of Limitation.

Title 11 U.S.C. § 35 provides:

That a discharge does not release a debt "for willful and malicious injuries to the person or property of another"; or a debt which is created by the debtor's "fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity".

The Plaintiff contends that the debt owed by Defendant to it falls within one or both of the categories set forth in this section.

■ The Discharge in Bankruptcy is prima facie proof of the discharge of Plaintiff's claim and the burden of proof is upon the Plaintiff to show that its claim falls within one or both of the foregoing exceptions. Kreitlein v. Ferger, 238 U.S. 21, 35 S.Ct. 685, 59 L.Ed. 1184.

The Agreed Facts discloses that the Court, in Civil Action No. 3507 found that Tanner, Inc. and Harold Tanner " * * * were indebted to the United States for quantities of agricultural commodities stored under contracts with the

[1]. "IT IS FURTHER AGREED that this note is given and accepted as evidence of the existing obligation between the parties and does not in itself create a new obligation."

**400**

Commodity Credit Corporation, * * * which said Defendants had sold and converted to their own use." However, the Agreed Facts do not disclose the circumstances attending the conversion.

■ A conversion may be a willful and malicious act but a conversion in all cases is neither willful nor malicious. Whether a conversion is willful or malicious depends upon the facts and circumstances attending and surrounding the conversion. Rees v. Jensen, 170 F.2d 348 (9th Cir. 1948); In re La Porte, 54 F.Supp. 911 (W.D.N.Y.1943); In re Millkofsky, 17 F.Supp. 127 (W.D.N.Y.1936); Royal Indemnity Co. v. Sherman et al., 124 Cal.App.2d 512, 269 P.2d 123, 42 A.L.R.2d 890 (1954).

■ Since there is a complete lack of the facts and circumstances surrounding the conversion in this case, this Court has no basis upon which to find that the conversion was or was not willful or malicious and since the burden is upon the Plaintiff to prove that the conversion was willful and malicious, the Plaintiff's claim on this count must fall for failure to sustain this burden.

As to the Plaintiff's second claim, we will assume for the purposes of this case, that a conversion is a "misappropriation" within the meaning of § 35 and will limit our discussion to the meaning of that portion of the section which provides a "* * * misappropriation * * * while acting as an officer or in any fiduciary capacity."

The Plaintiff states in its Brief:

"The cases decided under this section establish the principle that a liability arising as a result of a breach of an officer's duty as an officer of a corporation is non-dischargeable. It is clear that if an officer converts to his own use property owned by the corporation of which he is an officer, the liability for such conversion is non-dischargeable in bankruptcy. (In re Weil's Es-

tate, 249 Wis. 385, 24 N.W.2d 662 (1946) Cert. denied, 331 U.S. 807 [67 S.Ct. 1190, 91 L.Ed. 1828] (1947); Re Hammond, 98 F.2d 703 (2nd Cir. 1938), Cert. denied, 305 U.S. 646 [59 S.Ct. 149, 83 L.Ed. 418] (1939)."

In both cases cited, the plaintiff bringing the action was a corporation of which the bankrupt defendant was an officer at the time his misappropriations of corporate property were committed.

We do not disagree with the results reached in the cases cited and were Tanner, Inc. the plaintiff in this action, the rule cited by Plaintiff would apply; for at the time of the conversion in this case, Tanner was an officer of Tanner, Inc. and the conversion was specifically a breach of Tanner's fiduciary duty which he owed to his corporation as an officer thereof.

■ In this case, however, the debt owed by Tanner to the Plaintiff did not arise as a result of a breach of any fiduciary duty as an officer or otherwise owed by Tanner to the Plaintiff.

The debt here in question arose by virtue of an indemnity agreement executed by Tanner in his individual capacity to indemnify Plaintiff from any loss it might suffer on Bonds issued to the United States by Tanner, Inc. as principal and the Plaintiff as surety.

The Court concludes as a matter of law, that the debt sued upon was released and discharged by the Defendant's Discharge in Bankruptcy and that Judgment should be entered in favor of the Defendant and against the Plaintiff.

In view of this conclusion, it is not necessary to reach the question of limitations.

It is therefore ordered that Judgment be forthwith entered in favor of the Defendant and against the Plaintiff and that the Defendant have Judgment for his costs, to be taxed by the Clerk of the Court upon the filing of a Bill of Costs.