In re Roger Lynn WALKER, Janice Ann Walker, SS # 296–42–8490, SS # 296–44–9667, Debtor(s),

LEBANON PRODUCTION CREDIT ASSOCIATION, Plaintiff,

v.

Roger Lynn WALKER, et al., Defendants.

Bankruptcy No. 1–83–00285.
Adv. No. 1–83–0309.

United States Bankruptcy Court,
S.D. Ohio, W.D.

.Oct. 31, 1983.

Mark Florence, Lebanon, Ohio, for plaintiff.

Carroll V. McKinney, Hillsboro, Ohio, for defendants.

## DECISION

BURTON PERLMAN, Bankruptcy Judge.

Plaintiff herein is a secured creditor of defendant debtors. Defendants ˙are a farming couple whose farming operation was financed by plaintiff.

The complaint contains two causes of action. The first cause of action alleges that plaintiff had a security interest in defendants' 1981 crops. Plaintiff asserts that defendants "willfully and maliciously" caused "injury to plaintiff by selling and converting the proceeds of their 1981 crop without protecting plaintiffs' security interest therein," framing a claim under 11 U.S.C. § 523(a)(6). In its second cause of action, plaintiff alleges that the same act, that is, the sale of defendants' 1981 crops, amounts to an obtaining of money, property, and services by false pretenses, false presentations, or actual fraud, this claim using the language of § 523(a)(2)(A). At the trial, plaintiff abandoned its second cause of action. No evidence was introduced relating to critical elements necessary to such a case, e.g. intent to deceive or reliance. The matter came on for trial

which was, then, limited to the issue presented by § 523(a)(6), willful and malicious injury to another or to the property of another.

The facts are not really in dispute. On March 23, 1981 debtors borrowed $52,780.63 from plaintiff, executing a note therefor. On the same date they gave plaintiff a security instrument reciting that plaintiff was secured by "All crops including but not limited to: corn, beans and wheat." as well as "All farm machinery and equipment, including but not limited to tractors, tilling and harvesting tools." Also recited as collateral was "All stored crops". The foregoing related to a loan intended to be used by defendants, and actually used by them, to plant their crops in 1981. That crop year was disastrous. Defendants sold the crops from that year and received about $57,000.00. With these proceeds defendants paid their unsecured suppliers, but did not pay plaintiff. The evidence further showed that defendants had made like loans from plaintiff in 1979 and 1980. In both of those instances the proceeds from the sale of crops was sufficient to pay the suppliers of defendants and also to repay the loan to plaintiff. In each of the indicated years defendants had executed similar documents, notes, and financing statements, as they did in 1981.

The dealings of defendants with plaintiff were on a very informal basis, and defendants never read the instruments which were presented to them. They signed at the places where they were directed to by employees of plaintiff. They had a personal relationship with those employees. Defendant Roger Walker testified that in both 1979 and 1980 he talked with Harold Adams at plaintiff's office regarding a loan. He went back a second time to execute the documents at which time a woman showed him where to sign. There was no discussion with Adams or with the woman as to the security for the loan. The same thing had happened in 1979. In 1981, defendants did not discuss their loan with Adams, but rather with Amy Chambers. Chambers merely asked if they wished to take the loan on the same basis as in prior years.

Again, there was no discussion as to the collateral for the loan. Defendants believed that the only security for the loan was the farm equipment.

At the same time, there is no question that there was nothing concealed about the nature of the collateral securing plaintiff in the instruments signed by defendants, and that had defendants read those instruments, it would have been clear that plaintiff was secured by defendants' 1981 crops.

The question for us to decide upon the facts established by the evidence is whether defendants' failure to pay over to plaintiff the proceeds of sale of their 1981 crop amounted to willful and malicious action within the meaning of those terms as employed in the statute. The applicable statute is 11 U.S.C. § 523(a)(6) which provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

\* \* \* \* \* \*

Under the Bankruptcy Act, § 17(a)(2) made express reference to willful and malicious conversion as ground for denying discharge of a debt. The word "conversion" is omitted from the successor legislation, that above quoted, but the language "willful and malicious injury" was intended by the Congress to include a willful and malicious conversion. See 3 Collier on Bankruptcy, (15th ed.) ¶ 523.16[3], pp. 523–126 through 523–127.

In a decision under the Bankruptcy Act, *In re Johns* No.B–1–76–2164, slip op. at 6, (Bankr.S.D.Ohio entered August 31, 1977), we said the following:

But even assuming, arguendo, that net proceeds from sale of gasoline in the hands of defendant were plaintiff's property, we cannot see that there was a willful and malicious conversion thereof, even recognizing as urged by plaintiff that there is no need to prove any animus

or actual malice. *Not all conversions are willful and malicious, and whether a conversion is to be described as willful and malicious depends on the facts and circumstances of the case.* U.S.F. & G. Co. v. Tanner, 279 F.Supp. 396, 400 (D.C.Col.1968); *Rees v. Jensen,* 170 F.2d 348 (9th Cir.1948); *Royal Indemnity Co. v. Sherman et al.,* 124 Cal.App.2d 512, 42 A.L.R.2d. 890 [269 P.2d 123] (1954). (Emphasis supplied.)

This statement is valid under the Bankruptcy Code as well. See generally *In re Haynes,* 19 B.R. 849, 9 BCD 226 (Bankr.E. D.Mich.1982); *In re Norton,* 21 B.R. 725 (Bankr.W.D.Mo.1982).

■ That there was a conversion here there can be no doubt. Furthermore, we would not hesitate to characterize it as a willful and malicious conversion if all that the record showed was (1) a sale of collateral by defendants, and (2) that plaintiff had a security interest in the collateral which arose by reason of documents signed by defendants though not read by them. But that is not all that is shown here. In addition, the evidence showed that the manner of doing business between plaintiff and defendants was informal and depended upon a mutual trust. Because of that, defendants signed their loan instruments at the places where they were directed to by personnel of plaintiff. They did not read the contents of the documents. Plaintiff's people did not call the attention of defendants to the contents of the documents. Under these circumstances it is not surprising that defendants believed that the only collateral held by plaintiff was defendants' farm equipment, and that their crops were excluded. Because of the manner in which the parties dealt with each other, plaintiff must be held equally at fault as defendants for this erroneous state of knowledge on the part of defendants. The conversion of plaintiff's collateral by defendants in the belief that they had the right to sell that collateral without accounting to plaintiff for the proceeds of the sale, cannot be characterized as a willful and malicious injury to property. See generally *In re Haynes,* supra; 3 Collier on Bankruptcy (15th ed.) ¶ 523.16[3], p. 523–127; *In re Meyer,* 7 B.R. 932, 3 CBC 2d 534 (Bankr.N. D.Ill.1981); and *In re McGinnis,* 586 F.2d 162 (10th Cir.1978). We conclude that defendants must prevail on the issues, and the complaint dismissed.

In support of a contrary result, plaintiff has cited *In re Howard,* 6 B.R. 256 (Bankr. M.D.Fla.1980). We decline to follow that case because the court at p. 258 disagreed "with the strict test applied in *Hodges*", [referring to *In re Hodges,* 4 B.R. 513 (Bankr.W.D.Va.1980)], such test being a rejection of the "reckless disregard" standard for willful and malicious acts which had been applicable under the Act. We think the *Hodges* test correct. Plaintiff also relies upon *In re McCloud,* 7 B.R. 819 (Bankr.M.D.Tenn.1980). That case is distinguishable on its facts, for there the debtor testified that he had read the terms of the security agreements and understood that he was obligated not to dispose of the collateral without the consent of the lender Id. at 824. (It might be noted that at p. 825 in *McCloud,* the court reviews the legislative history regarding the "reckless disregard" standard appropriate under the Bankruptcy Code by contrast to what prevailed prior to the Code. The *McCloud* court states the correct test for willful and malicious acts, and it is the rejection of that test upon which the *Howard* case cited by plaintiff founders.)

The foregoing constitutes our findings of fact and conclusions of law.

In the light of the foregoing discussion, judgment will be issued in favor of defendants, and the complaint will be dismissed.