In re Thomas L. OWENS, SS # 294–64–8834, Debtor.

Roberta S. GRIMSLEY, Joseph G. Grimsley, Jr., Plaintiffs,

v.

Thomas L. OWENS, Defendant.

Adv. No. 1–83–0601.
Related No. 1–83–02323.

United States Bankruptcy Court, S.D. Ohio, W.D.

Aug. 16, 1984.

Mark Eckerson, Batavia, Ohio, for plaintiffs.

Gary Bowman, Milford, Ohio, for defendant.

## DECISION

BURTON PERLMAN, Bankruptcy Judge.

In this adversary proceeding a claim is asserted against defendant/debtor Thomas L. Owens based upon 11 U.S.C. § 523(a)(6), it being the position of plaintiffs that there is a debt owed them by defendant "for willful and malicious injury by the debtor" to the property of plaintiffs. More specifically, it is the contention of plaintiffs that defendant, who was then in the business of repairing automobiles, willfully and maliciously converted their Corvette which they had turned over to him for repairs. (Title to the vehicle was in the name of plaintiff Roberta S. Grimsley. Roberta Grimsley did not appear at the trial, but rather did her husband Joseph G. Grimsley, Jr., (hereafter "Grimsley") testify at the trial. Because plaintiffs are resident in Florida it was stipulated between the parties that Roberta Grimsley need not appear at the trial.) The proceeding came on for hearing. The only evidence was the testimony of Grimsley and of Thomas L. Owens. At the conclusion of the evidence we reserved decision.

The facts are essentially undisputed, though the parties draw radically different inferences from the facts. During the period here in question, from March 1981 until the spring of 1983, defendant was engaged in the automobile repair business in a sole proprietorship named Owens Corvette Center, located in Withamsville, Ohio. The proprietorship terminated in bankruptcy on August 1, 1983. In March 1981 Grimsley brought his Corvette to defendant's premises for repair. The vehicle had been involved in a rear-end collision. With plaintiffs' consent, the Corvette remained at those premises for some two years. Very extensive restoration was necessitated by the collision. As plaintiffs accumulated funds to pay for work, defendant performed it. Thus, the first thing that was done was in March 1981. It consisted of the installation of a new clip on the car, which connotes extensive body work. Further work was performed on two other occasions. The witnesses could not recall what had happened the second time but the third time, new brakes were installed and a major tune-up was done. The tune-up was in March 1982.

After the tune-up defendant moved the car outside and shortly thereafter the wheels and tires were stolen. Defendant reported the theft and informed plaintiff of it. Defendant had serious and continuing problems with vandalism and theft and kept guard dogs on the premises in an effort to deal with these problems. Defendant was not insured against the loss of the wheels and tires. The car remained on the ground without wheels and tires for an extended period of time, until some time in 1983.

Defendant never contacted Grimsley to tell him that the car had disappeared. Grimsley phoned defendant to find out where it was when he discovered that the car was no longer at defendant's premises. He left messages, but defendant never called him. Defendant testified that he did not call back because he was too busy. In addition, he initially thought that Grimsley might have removed the car himself—that someone was trying to pull something on him.

After discovery of the disappearance of the car, Grimsley called the police department and filed a stolen car report. The police did go out and check the report. No evidence was introduced with respect to the result of that investigation. Defendant on occasion offered to purchase the car from plaintiffs. After the disappearance of the vehicle, defendant did not return the ignition key for the car to plaintiffs.

Based upon the foregoing state of the record, it is the position of plaintiffs that they have carried their burden of showing a willful and malicious conversion by defendant of the vehicle here in question.

We have in prior decisions had occasion to deal with the law relevant to the question which is here presented to us. Thus, in *In re Walker*, 44 B.R. 1 (Bankr.S.D.Ohio), we said at pp. 2–3:

> The applicable statute is 11 U.S.C. § 523(a)(6) which provides:
> (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
>    \*    \*    \*    \*    \*    \*
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity:
>    \*    \*    \*    \*    \*    \*
> Under the Bankruptcy Act, § 17(a)(2) made express reference to willful and malicious conversion as ground for denying discharge of a debt. The word 'conversion' is omitted

from the successor legislation, that above quoted, but the language 'willful and malicious injury' was intended by the Congress to include a willful and malicious conversion. See 3 Collier on Bankruptcy, (15th ed.) ¶ 523.16[3], pp. 523–126 through 523–127.

In a decision under the Bankruptcy Act, *In Re Johns*, No. B–1–76–2164, slip op. at 6, (Bankr.S.D.Ohio entered Aug. 31, 1977), we said the following:

> But even assuming, arguendo, that net proceeds from sale of gasoline in the hands of defendant were plaintiff's property, we cannot see that there was a willful and malicious conversion thereof, even recognizing as urged by plaintiff that there is no need to prove any animus or actual malice. Not all conversions are willful and malicious, and whether a conversion is to be described as willful and malicious depends on the facts and circumstances of the case. *U.S.F. & G. Co. v. Tanner*, 279 F.Supp. 396, 400 (D.C.Col. 1968); *Rees v. Jensen*, 170 F.2d 348 (9th Cir.1948); *Royal Indemnity Co. v. Sherman, et al.*, 124 Cal.App.2d 512 [269 P.2d 123] 42 A.L.R.2d 890 (1954). Emphasis supplied.)

This statement is valid under the Bankruptcy Code as well. *See generally*, *In Re Haynes*, 19 B.R. 849 9 BCD 226 (Bankr.E.D.Mich.1982); *In Re Norton*, 21 B.R. 725 (Bankr.W.D.Mo.1982).

Further in *In Re Greenwell*, Adversary File No. 1–81–0111, Decision entered Dec. 30, 1981 (Bankr.S.D.Ohio) we said the following at pp. 2–3:

> The main case applied in the interpretation of the now superseded Bankruptcy Act of § 17(a)(8) was *Tinker v. Colwell*, 139 [193] U.S. 473 [24 S.Ct. 505, 48 L.Ed. 754] (1902). It is clear that in enacting the Bankruptcy Code, the Congress meant to change the way in which that case was being applied, as may be seen from a review of the legislative history of 11 U.S.C. § 523(a)(6), provided that a debtor 'for willful and malicious injury by the debtor to another entity or to the

property of another entity' was nondischargeable. (H.R.8200 95th Cong. 1st Sess. [1977]. The accompanying report (H.R.Rep. No. 595, 95th Cong. 1st Sess. 365 [1977] then elaborated upon this section as follows:

[Paragraph] 6 excepts debt for willful and malicious injury by the debtor to another person or the property of another person, Under this paragraph, 'willful' means deliberate or intentional. To the extent that *Tinker v. Colwell,* 139 [193] U.S. 473 [24 S.Ct. 505, 48 L.Ed. 754] (1902) held that a looser standard is intended, and to the extent that other cases have relied on Tinker to apply a 'reckless disregard' standard, they are overruled.

The Senate then modified this suggested language by adding 'conversion or' after 'willful and malicious.' 523(a)(5), S.B. 2266 95th Cong., 2d Sess., 416 (1978). Its report in all other aspects echoed the House Report S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978). The compromise bill, however, only contained the language of the House version. 124 Cong.Rec. H11509 (Daily Ed. Sept. 28, 1978). The statements of the sponsors in the House 124 Cong. Rec. H11096 (Daily Ed. Sept. 28, 1978) and the Senate 124 Cong.Rec. § 17412 (Daily Ed. Oct. 6, 1978) were likewise identical and referred exclusively to the language contained in the House version of the bill.

What is to be gleaned from this review is that Congress intended that it not be sufficient to classify an act as willful and malicious that it be one done with reckless disregard for consequences. An intentional act is required. It is not, however, necessary to find that personal ill will existed in order for there to be a finding of willful and malicious injury.

From the foregoing it is clear that in order to succeed plaintiffs must make out a prima facie case of intentional conversion. After a careful review of the record, we have come to the conclusion that Grimsley's testimony is insufficient for this purpose. Specifically, we are unable to conclude that plaintiffs have shown that there was a conversion rather than a theft. Plaintiffs do not succeed, not because they are mistaken as to the law, but because their evidence is insufficient to establish their case. The parties agree that plaintiffs' car disappeared from defendant's premises while it was there for repairs.

To make their case that defendant caused the disappearance plaintiffs argue that an inference of conversion arises because defendant admittedly was in financial difficulty at the time of the disappearance, and defendant failed to notify them of the disappearance when it occurred. He would not return the phone calls of Grimsley. Plaintiffs add to these facts the statement by defendant that he replaced the tires and wheels of the car shortly before its disappearance. We hold this evidence to be insufficient as a matter of law to make out plaintiffs' case.

Further, we are satisfied that the evidence established that there was a high incidence of vandalism and theft in defendant's vicinity, for defendant testified that he kept guard dogs in an effort to discourage such activity, and Joseph Grimsley admitted that he had seen such dogs. Nor can we, as do plaintiffs, attach to defendant's testimony that he replaced the wheels and tires, an implication that this was in furtherance of a scheme to convert the vehicle. There was no other source of evidence about replacement of wheels and tires and there would be no reason for defendant to admit that he had done this act if it were done for the purpose of enabling the conversion of the car.

There is totally missing from this record evidence to complete the circumstantial case which plaintiffs seek to make. An adequate case for plaintiffs would require, for example, some evidence of possession by defendant of unexpected funds at about the time of the disappearance of the vehicle. This might be seen through payment of supplier's bills or elsewhere in defendant's business records. No evidence of this sort is present. Also absent is any testimo-

**14**

ny by employees of defendant regarding the circumstances surrounding disappearance of the vehicle.

Plaintiffs rely upon *In Re Klix*, 23 B.R. 187 (Bankr.E.D.Mich.1982) in which a conclusion of nondischargeability of a debt on account of vehicles was reached by the court. That case is, however, distinguishable. Firstly, it involved a complaint by a secured creditor. A conversion was found by the court upon evidence that defendant transferred title to three vehicles without remitting the principal amount which he had borrowed from plaintiff as required by the floor planning agreement. The case does not turn upon the fact of disappearance of the vehicles. The question of sufficiency or insufficiency of the evidence was not before the court in that case.

Accordingly, we find the issues in favor of defendant. The complaint will be dismissed.

The foregoing constitutes our findings of fact and conclusions of law.