In re John MILLER, Debtor.

SEARS, ROEBUCK & CO., Plaintiff,

v.

John MILLER, Defendant.

Bankruptcy No. 1–86–01394.

Adv. No. 1–86–0168.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Feb. 9, 1987.

Supplemental Opinion Feb. 17, 1987.

William L. Keener, Bethel, Ohio, for defendant.

Harvey Immerman, Cincinnati, Ohio, for plaintiff.

BURTON PERLMAN, Bankruptcy Judge.

In its complaint in the present adversary proceeding, plaintiff alleges that it has a secured interest in a lawn tractor with grass catcher. It says that defendant has failed to redeem the property, reaffirm the debt, or return the property. It prays that we find the debt owing to plaintiff by defendant nondischargeable. Defendant denies the allegations of the complaint and asserts, essentially, that defendant does not have the tractor, but believes that it was picked up by plaintiff's representatives. By the time of trial, it was clear that the claim asserted by plaintiff arises under 11 U.S.C. § 523(a)(6). The nondischargeability statute there excepts from discharge debts incurred from willful and malicious injury to the property of another. A conversion of the property of another can be such an injury. 3 Collier on Bankruptcy (15th ed.) § 523.16 at p. 523–116; *In re Walker*, 44 B.R. 1 (Bankr.S.D.Ohio 1983).

To make its case, plaintiff offered the testimony of a collection manager in its employ, Dennis Shade. Shade testified that it is the practice of plaintiff to maintain a record of contacts that its people make with customers in plaintiff's efforts to collect accounts. He testified that the first effort to collect the account of defendant for the tractor was February 10, 1986. At that time, a letter was sent to defendant demanding payment or return of the item. Plaintiff thereafter decided to proceed with efforts to repossess the item, and scheduled a pickup of it for February 28, 1986.

Upon a further telephone contact, defendant said that he would make payment on the tractor and plaintiff thereupon decided to reschedule the pickup for March 6, 1986.

When defendant failed to make any payment by February 28, he responded to a telephone call by saying that he was tired of the contacts by plaintiff, and directed plaintiff to pick up the item. Plaintiff was then contacted by an attorney for defendant who said that defendant would be filing bankruptcy and that the filing would occur in some seven to ten days. For that reason, plaintiff desisted from efforts to regain possession. By March 17, however, there had been no filing in bankruptcy. Subsequently, defendant told plaintiff of an appointment with a different attorney who would be filing bankruptcy, and that appointment was for April 21. Plaintiff decided to wait until after that date to take steps regarding the tractor.

Shade testified that on March 6, 1986, when a pickup had been scheduled, a crew was sent out by plaintiff, but no one was at home and, consequently, the pickup was cancelled. He stated that it is the usual practice for a pickup crew to go to the home of a customer, and there identify itself to a resident. The customer usually surrenders the item voluntarily. The employee on the pickup gives a receipt for the item.

Defendant testified that he bought the tractor in question from the plaintiff on June 19, 1985. His testimony was that after a number of dunning calls, one morning he responded to such a call by telling plaintiff's representative to come and pick up the tractor. He said that when he returned from work that night, the tractor was gone and he assumed that plaintiff had taken it. In any case, his testimony is that he does not have the tractor and this fact is undisputed. At the same time, it is not disputed that plaintiff does not have the tractor and did not repossess it.

In sum, the picture which is presented here is that defendant purchased a lawn tractor from plaintiff, in which plaintiff retained a security interest. Defendant did not pay for the tractor, and does not have it in his possession, nor can he explain what happened to it, other than to say that he believed that plaintiff picked it up. Plaintiff is in the position where it is not able to say where the tractor is, or what has happened to it, other than to establish that it was, subsequent to its purchase by defendant, in defendant's possession. Defendant says that he does not have possession of the item, and offers no explanation of what happened to it, other than to say he believes plaintiff repossessed it.

In these circumstances, we are required to make a determination of whether plaintiff has succeeded in establishing its claim that defendant converted plaintiff's collateral, and that therefore the debt represented thereby should be held nondischargeable pursuant to 11 U.S.C. § 523(a)(6). We hold that plaintiff is entitled to succeed on that claim. The fundamental facts are not disputed. The lawn tractor was sold to defendant by plaintiff. Defendant had possession of it. Plaintiff's normal repossession procedures do not involve the taking of possession of an item in the absence of a customer, as is borne out by the fact that on one occasion when plaintiff's people came to repossess the tractor, and found no one at home, they left. Further, it is part of their procedure to give a receipt for an item which is repossessed. In the absence of presentation of such a receipt at the trial, or accounting for its absence, defendant fails to establish its contention that plaintiff itself picked up the item.

Where plaintiff makes out a prima facie case of conversion as it did with the showing which we have related, the burden then shifts to defendant to go forward with credible evidence presenting a defense to liability which, in this case, would require a showing that defendant no longer has possession of the tractor for reasons for which he ought not to be held liable. This, defendant has failed to do and, in the circumstances, we find the issues in favor of plaintiff.

The foregoing constitutes our findings of fact and conclusions of law.

In its complaint, plaintiff says that defendant owes it $2,928.56, plus interest, for merchandise. This allegation is denied in the answer. Extraordinarily, plaintiff failed to offer any evidence at the trial of the amount of its debt. The role of this court is not simply to make a determination of nondischargeability, for it would be judicially wasteful for us to hear a matter such as this on the merits, and then have a further proceeding before this or some other tribunal on the merits as to the amount of the claim. In this case, since it is undisputed that the item was purchased, and there were no payments made on it, we are going to schedule a further hearing to which we will allocate minimal time for the purpose of receiving evidence as to the amount of the debt, unless the parties stipulate to that amount in writing, forwarding such stipulation to us for entry into the record within ten days after the date of this Decision.

## SUPPLEMENTAL DECISION

BURTON PERLMAN, Bankruptcy Judge.

Our decision in favor of plaintiff in this dischargeability case was entered February 9, 1987. In the last paragraph of that decision, we required that the parties provide the court with an evidentiary basis upon which we could formulate a money judgment in the case. Our attention has been called to the existence of a stipulation which is part of the trial record. That stipulation shows that the purchase price of the item here in question was $1,430.38. We found as a fact in our earlier decision that no payments had been made thereon. Accordingly, plaintiff shall have judgment in the amount of $1,430.38.

So Ordered.