Mrs. Bella M. **BAILEY**

v.

The **UNITED STATES.**

No. 243–73.

United States Court of Claims.

Feb. 19, 1975.

Robert H. Turtle, Washington, D. C., atty. of record, for plaintiff. James M. McHale, Washington, D. C., of counsel.

Stephen Schachman, Washington, D. C., with whom was Asst. Atty. Gen. Carla A. Hills, for defendant.

Before COWEN, Chief Judge, and SKELTON and BENNETT, Judges.

COWEN, Chief Judge.

■ Mrs. Bella M. Bailey brings this action as personal representative of her late husband, Lieutenant Colonel Frank W. Bailey (Ret.).[1] Plaintiff alleges that her husband, because of the erroneous decision of defendant, was denied the full measure of his Civil Service retirement annuity. Plaintiff directly calls into question the interpretation of Title 5, Section 8332 of the United States Code as formulated by the Board of Appeals and Review in its decision in this matter on May 25, 1973. As a result, she sues to recover an amount of money representing the difference between the past annuity payments her husband received and the amount of payments to which she claims he was entitled. She asks further that we order the Civil Service Commission to revise the retirement records of her late husband to reflect her interpretation of 5 U.S.C. § 8332.[2] For reasons discussed below, we believe the Board of Appeals and Review was correct in its interpretation of the relevant statutory provisions and, accordingly, we have concluded that plaintiff should not recover.

The case is before us on cross motions for summary judgment, and there is no dispute as to material facts. Plaintiff's

husband commenced a long career of Federal service on March 2, 1931, as a civilian employee of the War Department. After serving as an inspector, boatman, and student engineer, Col. Bailey rose through the ranks until he became an Associate Engineer in 1942. In August 1942, after more than 11 years in the Federal Government as a civilian employee and during the height of World War II, Col. Bailey became an officer in the active Army, serving until his discharge in 1951. After leaving the military, plaintiff's husband was again employed by the Government in a civilian position, this time as a GS-11 General Engineer with the Department of the Army. However, this stint as a civilian employee lasted only 6 months; in July 1951, Col. Bailey took leave from his Civil Service position to enter the Air Force during the Korean Conflict. His military career continued for 12½ years, until he retired from the Air Force on January 31, 1964. During his lifetime, Col. Bailey received a retirement annuity from the Air Force, based on the 21 years he served in the military.

Col. Bailey's retirement from the military is not the final chapter of this story. Seven months thereafter he again became a civilian employee, as a GS-11 General Engineer with the District of Columbia. His retirement from the civilian service of the Federal Government occurred on September 30, 1971, as a GS-12-05 General Engineer. After this retirement, Col. Bailey began receiving, in addition to his military annuity, a retirement annuity for his civilian employment in the Federal Government. Although he originally received credit for certain periods of his active military duty in the computation of his Civil Service retirement pay, this computation

1. Having already exhausted his administrative remedy available at the Civil Service Commission, Col. Bailey himself brought this action before the court. However, before we could hear oral argument on his claim, he died on July 24, 1974. Our decision has been held in abeyance pending proper substitution of a party plaintiff under Rule 66(a). This substitution occurred on December 20, 1974, when

Mrs. Bailey, as the authorized personal representative of her late husband's estate, was named as plaintiff in this litigation.

2. It should be noted that the question of this litigation did not become moot by the death of Col. Bailey, especially since his widow's benefits are calculated by reference to the amount of his annuity during life.

was only provisional. Indeed, credit for his military service was allowed only because of Col. Bailey's incorrect statement as to the reason for his retirement; he originally stated that he had been retired under Chapter 67, Title 10 of the United States Code. When it was determined that, in fact, Col. Bailey's retirement from military service was due to his age (63) and the length of his military service and had been accomplished pursuant to 10 U.S.C. § 8911, the credit was denied by the Bureau of Retirement Insurance and Occupational Health (BRIOH). This decision by BRIOH had the effect of reducing Col. Bailey's Civil Service retirement annuity from the provisional amount of $840 per month to $431 per month.

Plaintiff's husband immediately protested the denial of credit for his military service; he claimed the ruling was the result of a "misapplication of the statute, 5 U.S.C. § 8332." Col. Bailey's primary focus in this protest was on paragraphs (b) and (g) of section 8332, which provide:

(b) The service of an employee shall be credited from the date of original employment to the date of separation on which title to annuity is based in the civilian service of the Government.

\* \* \* \* \* \*

(g) An employee who during the period of a war, or of a national emergency as proclaimed by the President or declared by Congress, leaves his position to enter the military service is deemed, for the purpose of this subchapter, as not separated from his civilian position because of that military service, unless he applies for and receives a lump-sum credit under this subchapter. However, the employee is deemed as not retaining his civilian position after December 31, 1956, or after the expiration of 5 years of that military service, whichever is later.

Simply stated, it was Col. Bailey's position that these two paragraphs unquali-

fiedly allow credit for military service for those in his situation and that he was entitled to credit 13 years, 11 months of his military service in the computation of his Civil Service retirement annuity.[3]

However, Mr. Isaac Joseph, Chief of Section, BRIOH, was not persuaded by Col. Bailey's argument and denied his request for reversal of the original BRIOH position. In his letter dated May 11, 1972, to Col. Bailey's attorney, Mr. Joseph stated:

[Section 8332] cannot be construed to mean that all civilian employees who leave their positions to enter the Armed Forces are entitled to civilian retirement credit for such periods of service in the Armed Forces regardless of the fact that they may receive retired pay based on the military service.

The BRIOH placed special emphasis, not on paragraphs (b) and (g) of section 8332, but on paragraph (c), which provides:

(c) Except as provided by subsection (d) of this section, an employee or Member shall be allowed credit for periods of military service before the date of the separation on which title to annuity is based. However, if an employee or Member is awarded retired pay on account of military service, his military service may not be credited unless the retired pay is awarded—

(1) on account of a service-connected disability—

(A) incurred in combat with an enemy of the United States; or

(B) caused by an instrumentality of war and incurred in line of duty during a period of war as defined by section 301 of title 38; or

(2) under chapter 67 of title 10.

It was the Government's position, as it is today, that no credit should be allowed Col. Bailey, since his military service did not come within either of the specific

---

3. This calculation includes the entire 8 years, 6 months of active duty from August 1942 to February 1951, and the portion of his second "tour of duty" that occurred prior to December 31, 1956 (5 years, 5 months).

exceptions to the paragraph (c) prohibition against "double" credit for periods of military service.[4]

This initial affirmance of the original BRIOH decision regarding Col. Bailey's civilian annuity was appealed first to the Legislative and Policy Division of BRIOH, where Solomon Pepperman, Chief of the Division, concluded that:

> [u]nless and until Colonel Bailey elects to waive his retired pay, 5 U.S.C. 8332(c) bars us from allowing him credit in the computation of his annuity benefits for his periods of military service from August 2, 1942 to June 16, 1950, and from July 19, 1951 to January 31, 1964.

Following this final decision by BRIOH, Col. Bailey appealed to the Board of Appeals and Review (BAR). The parties agree that during its consideration of the appeal, BAR received a policy memorandum regarding the correct interpretation of section 8332 from the Legislative and Policy Division of BRIOH. This correspondence, as well as Col. Bailey's personnel file, was transmitted to Col. Bailey's attorney. However, two items attached to the original memorandum were not sent to plaintiff's husband or to his attorney; these enclosures were the prior Civil Service decisions in Charles S. Lawrenson (CSF 300 243) and William H. Looney (CSF 858 784). In denying Col. Bailey access to these opinions, William P. Berzak, Chairman of the BAR, wrote on May 3, 1973, that:

> the Board adjudicates each case on the basis of the record in that case and is not bound by previous decisions on other appeals.

> *     *     *     *     *     *

> 5 CFR 831.106 provides that the Commission shall not disclose information from the files, records, reports, and other papers and documents pertaining to a claim filed with the Commission,

whether potential, pending, or adjudicated. Therefore, the files of other cases appealed to the Board are not for release.

No further action was taken by Col. Bailey regarding the information he requested but did not receive, and on May 25, 1973, the BAR denied Col. Bailey's appeal on the merits of his claim. In its decision, the BAR found that paragraph (g) of section 8332 was not intended to cover situations such as Col. Bailey's, and that paragraph (c), which was determined to be controlling, "plainly state[d] that if retired pay is awarded on account of military service, with the exceptions noted, military service may not be credited toward Civil Service Retirement."

## I

Mrs. Bailey's action presents the court with an issue of first impression: whether a person retired from the military because of age and length of service, who is receiving a military retirement annuity based on *all* of his military service, is entitled to credit any portion of that military service in the computation of his Civil Service retirement annuity. More simply stated, our question is whether a Federal employee can receive double credit for his military service for reasons other than those specifically listed in 5 U.S.C. § 8332(c)(1) and (2). The cases cited to us by the parties are clearly not precisely on the point presented in this case; instead, they deal with whether an employee can count his years of military service, which are *not* used to determine his military retirement pay, to increase the period of his service for the computation of his Civil Service retirement annuity. For example, in Prentiss v. United States, 105 F.Supp. 989, 123 Ct.Cl. 225 (1952), the plaintiff served approximately 32 years with the military but received a military retirement annuity based on only 30 years of his military

---

**4.** Since Col. Bailey never petitioned the Air Force Board for Correction of Military Records to change the character of his retirement, we must assume that he was indeed retired pursuant to 10 U.S.C. § 8911 as found by BRIOH. Furthermore, plaintiff now does not contend that her husband was retired as described in paragraph (c)(1) or (c)(2) of section 8332.

service. The court allowed the plaintiff to use the period of time spent in the military *in excess* of 30 years to supplement his 7½ years of civilian employment in the computation of his Civil Service retirement pay. *See* Bond v. United States, 135 F.Supp. 433, 133 Ct.Cl. 204 (1955), cert. denied, 351 U.S. 974, 76 S.Ct. 1031, 100 L.Ed. 1491 (1956). This holding was later extended somewhat in Hobson v. United States, 151 Ct.Cl. 201 (1960), when the court determined that such "excess" military service need not be in excess of 30 years but could be any time spent in the military which is *not* utilized in the computation of the military annuity.[5] Thus, it is clear that this line of decisions neither condones nor forbids the type of dual credit Mrs. Bailey is presently seeking.

## II

Although she relies mainly on her interpretation of the applicable statute, plaintiff also challenges the validity of the administrative decision on two grounds which are unrelated to its correctness as a matter of law. As previously stated, the Director of BRIOH sent the Chairman of the BAR a memorandum which recited the provisions of 5 U.S.C. § 8332(c), discussed some of the legislative history of that statute, and referred to two previous decisions by the Civil Service Commission. Plaintiff's attorney was furnished a copy of the memorandum before the appeal was decided, but his request for copies of the decisions in the two cases referred to was denied. Plaintiff maintains: (1) the memorandum constituted an ex parte communication which nullifies the decision of the BAR; (2) the Freedom of Information Act voids the BAR decision, because it relied on two previous decisions which were not made available to the public,

and (3) the defendant's failure to furnish plaintiff's attorney with copies of the two decisions mentioned was a denial of due process, which renders the decision null and void. Plaintiff's purpose in advancing these contentions was clarified by plaintiff's attorney at oral argument when he stated:

[W]e raised those two basic arguments because we believe the Civil Service proceedings held in this case, and for that matter, in all cases, do not comply with due process. *We don't believe that the record established in those cases or the decision-making process should be given any weight by this court.*

We need not and do not rule on the merits of these contentions. Any denial of due process or other error by the Civil Service Commission is of no consequence in the present posture of this case. The facts are not in dispute, and we are not concerned here with a challenge to any administrative finding of fact. On the contrary, the BAR ruling was a decision on a question of law which is not binding on the court. Therefore, if plaintiff were correct in her interpretation of section 8332, we could render a decision in her favor and thereby remedy any lack of due process or other defects in the administrative proceedings.

## III

As plaintiff's counsel conceded at oral argument, "this is clearly a case of statutory construction, pure and simple." The proper starting point for interpreting section 8332 is, of course, the specific language found therein, since "a clear and unambiguous statute speaks for itself." Selman v. United States, 498 F.2d 1354, 1356, 204 Ct.Cl. 675, 680 (1974). However, the language of para-

---

5. The plaintiff in *Hobson,* although serving for 25 years, 8 months in the military, received retired pay based on the active-duty pay of a person of his rank with 24–27 years of service. He argued successfully that his military annuity was actually based on 24 years of service and that 1 year, 8 months could be categorized as "excess," pursuant to *Prentiss.* 151 Ct.Cl. at 202. *Hobson* specifically overruled that part of the decision in McLarren v. United States, 178 F.Supp. 478, 147 Ct.Cl. 497 (1959), which had held that only where there were over 30 years of service could there be "excess service." 151 Ct.Cl. at 204.

graphs (b) and (g) of section 8332, taken together, seemingly contradicts the general prohibition against "dual credit" clearly enunciated in paragraph (c) of the same statute. It is our duty to attempt to harmonize these various statutory provisions,[6] and in order to accomplish this task, we must determine the intended scope of the paragraphs upon which plaintiff relies.

■ To decide whether Col. Bailey's situation was intended by Congress to be governed by the language of paragraph (g), we must delve into the purpose of that provision and the circumstances under which the language was employed. American Export Isbrandtsen Lines, Inc. v. United States, 499 F.2d 552, 579, 204 Ct.Cl. 424, 469 (1974); Sea-Land Service, Inc. v. United States, 493 F.2d 1357, 1361, 204 Ct.Cl. 57, 71, cert. denied, 419 U.S. 940, 95 S.Ct. 69, 42 L.Ed.2d 67 (1974); *see* Puerto Rico v. Shell Co. (P.R.) Ltd., 302 U.S. 253, 258, 58 S.Ct. 167, 82 L.Ed. 235 (1937). A statute can never be divorced from the circumstances existing at the time it was passed or from the evil which Congress sought to correct and prevent. United States v. Wise, 370 U.S. 405, 412–14, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962); CAB v. Delta Air Lines, Inc., 367 U.S. 316, 323–24, 81 S.Ct. 1611, 6 L.Ed.2d 869 (1961); United States v. Champlin Refining Co., 341 U.S. 290, 297, 71 S.Ct. 715, 95 L.Ed. 949 (1951); Akins v. United States, 439 F.2d 175, 177, 194 Ct.Cl. 477, 483, (1971). In their arguments before the court, both parties have relied primarily on the available legislative history of paragraph (g), and we also turn to this source in interpreting the statutory provisions at issue.

Section (g) was originally enacted November 9, 1945, by the 79th Congress directly to counteract a Comptroller General's decision handed down in January of that year. *See* 24 Comp.Gen. 573 (1945). This opinion (No. B–46952) over-turned existing Civil Service Commission policy and determined that a Government employee-soldier could not be continued in a civilian status for retirement purposes while on active duty; from this determination it followed that no right to any civilian retirement benefit or service credit toward retirement longevity could attach until the employee returned to his civilian position. *See* BAR Decision, at 3; Nordstrom v. United States, 342 F.2d 55, 61, 169 Ct.Cl. 632, 642 (1965). The Civil Service Commission disagreed with the Comptroller General on this subject and proposed the bill (H.R. 3256), which later became the 1945 Act, Public Law 79–216. What troubled the Commission was the differentiation made as a practical result of the Comptroller General's decision between the treatment of employees furloughed at the commencement of World War II from their civilian Government positions to work in private industry and those who entered the military. As was stated in a letter dated May 15, 1945, to Representative Sam Rayburn from Harry B. Mitchell, President, United States Civil Service Commission:

> Under the [Comptroller General's] decision such persons who become disabled in employment in private industry would be entitled to such compensation as may be allowed by the employer or State laws as well as disability annuity under the civil-service retirement law; whereas, a furloughed employee disabled in combat with the enemy would be deprived of any retirement annuity by reason of his civil service with the possible exception of some future annuity benefit to which he may have had a vested right at the time of entrance in the military service.

Thus, it is clear that the concern of the Commission was not a general one for all personnel leaving civilian employment to serve in the military, but rather was directed specifically at those who, because

---

6. *See* Montgomery Charter Serv. Inc. v. Washington Metropolitan Area Transit Comm'n, 117 U.S.App.D.C. 34, 325 F.2d 230 (1963). *See also* Maiatico v. United States, 112 U.S.App.D.C. 295, 302 F.2d 880, 886 (1962).

of combat-related wounds, were unable to return after the war to their previous civilian positions.

The Committee Reports accompanying H.R. 3256 demonstrate that Congress passed this legislation with only a small class of employee-soldiers in mind. House Report No. 757 states in part that:

> The purpose of this bill is to meet a decision of the Comptroller General ruling that it is not possible for a former employee who returns from the armed services with a physical disability and whose condition is such as to prevent his reemployment, to receive the benefits of the Retirement Act.

H.R.Rep. No. 757, 79th Cong., 1st Sess. 1 (1945). The Senate Report evidences a similar legislative purpose when it states:

> The purpose of this bill is to permit the retirement of former employees of the Government who incur physical disability while serving in the armed forces, without requiring them to be restored to their civilian positions prior to retirement.

S.Rep. No. 564, 79th Cong., 1st Sess. 1 (1945).

Further evidence of the Congressional purpose and intended scope of this legislation may be found in the debate on this bill in the House of Representatives on June 25, 1945. Congressman Ramspeck, Chairman of the Civil Service Committee, spoke eloquently of the desire of the Committee when he said:

> Mr. Speaker, the purpose of this bill is to cure a situation *that has developed in a few cases* where veterans have come back from service in the armed forces and have been unable to return to their positions.
>
> Under the Retirement Act, in such cases they are not entitled to disability retirement; whereas if they could go to work for 1 day, they would be entitled to it.
>
> The Civil Service Commission has recommended this bill. The committee has passed it unanimously, feeling that

it is not right or fair to deprive these men who have suffered grave injury because of their service in the armed forces—to deprive them of their disability retirement rights simply because of the technicality that they cannot return to their former jobs for as much as 1 day. Some of the disabled cases are mental cases who could not be restored to their positions. If they came back with some other disability under which they could go back to work for even as much as a day, they could get the disability retirement.

> \*      \*      \*      \*      \*      \*

> [The bill] *deals only with the cases of men who are unable to go back to work.* As I stated, cases have come to our attention of mental disability where they could not go back to work for even a minute \* \* \*.

91 Cong.Rec. 6653 (1945) (remarks of Congressman Ramspeck). Congressman McCormack summed up the Congressional purpose in the following manner:

> In other words, the purpose of this legislation is to say that a man who was working for the Federal Government and left that employment to enter the armed services, either the Army, Navy, Marines, or Coast Guard, was wounded and disabled while in the service to the point that he cannot go back to his former Federal job or any other Federal job, that such person will not be denied the benefits he would otherwise be entitled to under the Federal Employees Retirement Act.

91 Cong.Rec. 6654 (remarks of Congressman McCormack).

The original version of 5 U.S.C. § 8332(g) did not contain a provision limiting creditable military service to the later of either December 31, 1956, or 5 years after the expiration of military service. This limitation was added by the Federal Executive Pay Act of 1956, Public Law 84–854. Since this addition was only a minor portion of a long and complicated Act, which dealt with a wide range of material in the Federal person-

**548**

nel area, little was said about paragraph (g) in the available legislative history. In fact, the only reference to this paragraph is found in a letter from Phillip Young, Chairman, Civil Service Commission, to Congressman Tom Murray, Chairman of the House Committee on Post Office and Civil Service. Plaintiff argues that this correspondence demonstrates that the Commission had construed section 8332(g) as allowing all employees credit for military service in computing civil service annuities. While certain portions of Chairman Young's letter are unclear, we certainly find nothing therein which is sufficient to contravene the clear Congressional purpose evidenced throughout the legislative history of the original enactment of paragraph (g). Although Chairman Young made no direct reference to the narrow purpose of this provision, he alluded to it indirectly when, in describing the proposed limitation on paragraph (g), he stated:

> This provision would generally affect adversely only those persons who *do not* return to civilian duty. [emphasis supplied]

■■ In summary, we hold that the legislative history of paragraph (g), taken as a whole, demonstrates clearly that this provision was enacted for the specific purpose of counteracting the ruling of the Comptroller General regarding civilian retirement rights of employee-soldiers. Furthermore, we conclude that paragraph (g) was meant to aid only those Federal employees who left their civilian jobs during times of national emergency to enter military service and became so disabled or otherwise incapacitated that they were unable to return to civilian Government service.[7] Although we presume that Col. Bailey served his country with valor during World War II and the Korean Conflict, the simple fact is that he was able to return to civilian positions after both tours of duty.

Therefore, his military service did not qualify him for the benefits intended by paragraph (g), and his entitlement to retirement annuity is governed by the clear language of paragraph (c).

## IV

For the reasons stated, we find that the decision of the Board of Appeals and Review .was correct as a matter of law. Accordingly, we deny plaintiff's motion for summary judgment, grant defendant's cross motion for summary judgment, and dismiss plaintiff's petition.

---

7. It should be noted that this conclusion is in line with what the court has determined to be the scope of paragraph (g) in the past, when it has been confronted with other issues in this area. *See* Nordstrom v. United States, 177 Ct.Cl. 818 (1966); Nordstrom v. United States, 342 F.2d 55, 169 Ct.Cl. 632 (1965).