In the Matter of Morris L. HAYNES, Debtor.

CADILLAC VENDING CO. and Union Music Co., Inc., Plaintiffs,

v.

Morris L. HAYNES, Defendant.

Bankruptcy No. 81–06399–B.
Adv. No. 81–0377.

United States Bankruptcy Court,
E. D. Michigan, S. D.

April 26, 1982.

---

Robert K. Costello, East Detroit, Mich., for plaintiffs.

Gary F. Wyner, Southfield, Mich., for defendant.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

Morris Haynes (debtor) operated various restaurants and lounges in southeastern Michigan for over 20 years. For a significant number of these years, the debtor did business with Cadillac Vending Co. and Union Music Co. (hereinafter both referred to as Cadillac), which leased various vending machines and game tables to restaurants and lounges such as the debtor's. Under these agreements, the lessee supplied electricity and space for the machines and received a portion of the receipts in return.

In 1976, North American Interstate (North American) approached the debtor with a lease/purchase arrangement for the same type of machines that the debtor was then leasing from Cadillac. The debtor terminated his relationship with Cadillac in favor of the more financially advantageous contract with North American. He returned Cadillac's equipment to Cadillac and tendered a check to Cadillac in final satisfaction of his liability. Cadillac did not deposit the check, but instituted suit in state court against both the debtor and North American for breach of contract. The state court found that there was a valid contract between debtor and Cadillac, that the debtor intentionally breached the contract, that Cadillac was damaged by the breach, and, that North American intentionally interfered with Cadillac's contractual relationship. Based upon these findings, the court ordered the debtor and North American to pay to Cadillac $65,978

in compensatory damages and interest, exemplary damages of $10,000, and costs and attorney fees.

The debtor then filed a petition for relief in bankruptcy under Chapter 7 of the Bankruptcy Code and scheduled the judgment debt to Cadillac. Cadillac filed an adversary complaint to except this debt from discharge pursuant to section 523(a)(6).

At the dischargeability hearing, Cadillac established, as it did in the state court proceeding, that the debtor intentionally breached his contract with Cadillac. Since a contract interest is a property right, *Hecht v. Pro-Football, Inc.*, 570 F.2d 982 (D.C.Cir.1977); *North Texas Producers Assoc. v. Young*, 308 F.2d 235 (5th Cir. 1962) *cert. den.* 372 U.S. 929, 83 S.Ct. 874, 9 L.Ed.2d 733 (1963), Cadillac maintains that the debt created by the intentional breach is non-dischargeable under section 523(a)(6).[1]

Section 523(a)(6) provides that

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Section 17(a)(8), from which section 523(a)(6) was derived, has generally been held to cover liabilities attributable to tortious conduct of the debtor—liabilities based on assault and battery,[2] malicious prosecution and false imprisonment,[3] intentional infliction of emotional distress,[4] and injuries to character and reputation such as

---

1. Initially, Cadillac contended that since the state court determined that the debtor intentionally breached his contract with Cadillac and awarded punitive damages, the debt was non-dischargeable by virtue of section 523(a)(6). At a pre-trial conference, this court ruled that a state court judgment is determinative of the question as to whether a debt is or is not dischargeable only if the issues involved in the dischargeability action were litigated and decided in the state court action. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *Spilman v. Harley*, 656 F.2d 224 (6th Cir. 1981); *In re Herman*, 6 B.R. 352 (Bkrtcy.S.D.N.Y.1980); *Matter of Supple*, 8 B.C.D. 544, 14 B.R. 898 (Bkrtcy.D.Conn.1981). Cadillac decided to submit additional testimo-

ny. In light of the testimony adduced at the evidentiary hearing, this controversy should have been submitted on a motion for summary judgment.

2. *E.g., Western Surety Co. v. Rich*, 141 F.Supp. 872 (W.D.Okl.1956); *In re Drowne*, 124 F.Supp. 842 (D.R.I.1954); *Truesdail v. Hall*, 1 B.R. 130 (Bkrtcy.E.D.Mich.1979).

3. *Koch v. Segler*, 331 S.W.2d 126 (Mo.App. 1960); *McChristal v. Clisbee*, 190 Mass. 120, 76 N.E. 511 (1906).

4. *In re Berberian*, 12 B.R. 465 (Bkrtcy.D.R.I. 1981).

libel and slander.[5] Cadillac, however, contends that section 523(a)(6) does not distinguish between debts which are based on tort or on contract. The only question to be determined, Cadillac maintains, is whether the conduct which gave rise to the debt resulted in a "willful or malicious injury to person or property." *National Homes Corp. v. Lester Ind., Inc.*, 336 F.Supp. 644, 647 (W.D.Va.1972); *see, also, In re Nance*, 556 F.2d 602 (1st Cir. 1977); *Rivera v. Moore-McCormack Lines, Inc.*, 238 F.Supp. 233 (S.D.N.Y.1965).

The cases relied upon by Cadillac do contain language that supports its position. Whether they are authority for the proposition that a mere breach of contract constitutes a "willful and malicious injury" is debatable. All of the cases relied upon involved tortious conduct, although the pleas for relief were fashioned as for breach of contract. In *Rivera*, the debtor was a seaman who had engaged in the battery of a co-worker. After indemnifying the co-worker, the employer brought suit against the debtor for indemnity based on a breach of his "duty to perform in a workmanlike manner." In *National Homes*, the underlying debt arose from an action by the purchaser of the debtor's business for a breach of contract not to compete. In an action for breach of contract, the state court had awarded punitive damages. In a later dischargeability action, the district court found the award of punitive damages in the state court "amply support[ed] the conclusion that the judgment for punitive damages was awarded for willful and malicious injuries within the meaning of [bankruptcy] statute." The court additionally found, however, that the injury there was one of

these "exceptional cases where the breach amounts to an independent, willful tort." 336 F.Supp. at 647, 648. In *In re Nance, supra*, the court found that the debtor was guilty of converting the creditor's interest in a wage assignment contract created for the creditor's benefit.

However, whatever interpretation the cases appear to support, it is amply clear that a debt arising out of a mere breach of contract absent any showing that the purpose of the breach was to cause injury is not a non-dischargeable debt within the meaning of § 523(a)(6). Debts based upon willful and malicious injury to a person or property of a person have been non-dischargeable since the enactment of the Bankruptcy Act of 1898.[6] This ground for exception has been the subject of extensive judicial interpretation. *See, e.g., Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904); *Audit Services, Inc. v. Rolfson*, 641 F.2d 757 (9th Cir. 1981); *Den Haerynck v. Thompson*, 228 F.2d 72 (10th Cir. 1955); *Rees v. Jensen*, 170 F.2d 348 (9th Cir. 1948); *Harrison v. Donnelly*, 153 F.2d 588 (8th Cir. 1946); *Greenfield v. Tuccillo*, 129 F.2d 854 (2d Cir. 1942). The cases interpreting the clause "willful and malicious injury" to personal property have uniformly held that it refers to "a wrongful act, done intentionally, which necessarily produces harm and is without a just cause or excuse." *In re Baiata*, 12 B.R. 813, 818 (Bkrtcy.E.D.N.Y. 1981). *See also, Matter of Kearny Chemicals, Inc.*, 468 F.Supp. 1107 (D.Del.1979); *Matter of Frisby*, 444 F.Supp. 227 (S.D.Miss. 1976); *Matter of Warren*, 7 B.R. 546

---

**5.** *In re Dowie*, 202 F. 816 (S.D.N.Y.1912).

**6.** Section 17(a)(2) of the 1898 Act provided that "[a] discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as . . . (2) are judgments in actions for frauds, or obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another." P.L. 171, 55th Cong., § 17(a)(2) (July 1, 1898). The willful and malicious clause of § 17(a)(2) was not changed by the Chandler Act of 1938. P.L. 696, 75th Cong., § 17(a)(2)

(June 22, 1938). In 1970, the willful and malicious injury exception was shifted to § 17(a)(8) which excepted from discharge "liabilities for willful and malicious injuries to the person or property of another other than conversion." P.L. 91–467, 91st Cong., 2d Sess. § 6 (Oct. 19, 1970). Nondischargeability of liability for conversion was retained under § 17(a)(2). The provisions of §§ 17(a)(2) and 17(a)(8) were recombined in § 523(a)(6) of the Code. 124 Cong.Rec. H 11,096 (Sept. 28, 1978); S 17,413 (Oct. 6, 1978).

(Bkrtcy.M.D.Ga.1980); *In re Gabrielson,* 5 B.C.D. 1248, 1 B.R. 563 (Bkrtcy.E.D.N.Y. 1979). The debtor did not terminate the contract to cause injury to Cadillac. The debtor terminated the contract to enhance his own economic interest. The contract was terminated for just cause.[7]

Moreover, any realistic reading of the discharge and dischargeability provisions of the Code clearly establishes that the section 523(a)(6) exception, like section 17(a)(8) from which it is derived, was not intended to make non-dischargeable debts arising from mere breach of contract. *Barbachano v. Allen,* 192 F.2d 836 (9th Cir. 1951); *Matter of Barton,* 465 F.Supp. 918 (S.D.N.Y. 1979); *Matter of Brazington,* 3 B.R. 309 (Bkrtcy.D.Idaho 1980); 1A Collier on Bankruptcy ¶ 17.17 (14th ed. 1974). Section 523(a)(6) reflects the policy of the Code that debts created by reprehensible conduct should not be discharged.[8] The vast majority of contracts are entered into for reasons of pecuniary gain, and the foreseeable consequences of breach are also pecuniary. Thus, a party may intentionally breach a contract with the knowledge that an injury may result, but the nature of the injury is in large part foreseeable and assumed as a part of the risk of doing business. The injury is real, but it is not "malicious" in the sense that it deserves exception from discharge under the Bankruptcy Code. The intentional breach is not of itself conduct covered by section 523(a)(6).[9] A primary purpose of bankruptcy legislation is to "re-lieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).[10] To hold that a debt incurred as the result of a business judgment constitutes an intentional injury to property within the meaning of section 523(a)(6) would frustrate this purpose.

■ Finally, Cadillac's contention that an intentional breach of an unfavorable business contract is grounds to except the debt arising from that breach under section 523(a)(6) is inconsistent with the Code's approach to contract termination. A debtor or trustee may reject an unfavorable contract under section 365(a) on no other grounds than that to do so is "a reasonable exercise of its business judgment." *In re High Fliers, Ltd.,* 7 B.C.D. 747, 747 (S.D.Cal. B.J.1981). *See also, In re J. H. Land and Cattle Co., Inc.,* 7 B.C.D. 228, 8 B.R. 237, 3 C.B.C.2d 695 (Bkrtcy.W.D.Okl.1981). Cadillac's construction of 523(a)(6) would single out for punitive treatment an act performed prior to bankruptcy which is authorized during the pendency of the case. Various sections of a legislative scheme ought to be interpreted as consistent with one another so as to give effect to the legislative purpose. *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374

---

**7.** This case does not involve a debtor who terminates a contract for the express purpose of injuring the other party to the contract.

**8.** The same policy finds expression in § 523(a)(2) and (4) which excepts from discharge debts incurred by various kinds of fraudulent conduct. Section 523(a)(2)(4) and (6) embodies Congressional policy that bankruptcy relief is to be accorded only to an 'honest' debtor. *Hanover Nat'l Bank v. Moyses,* 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902); *Lawrence T. Lasagna, Inc. v. Foster,* 609 F.2d 392 (9th Cir. 1979) *cert. den.* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980); *In re Oxford Inv. Co.,* 246 F.Supp. 651 (S.D.Cal. 1965).

**9.** In Michigan, as elsewhere, an intentional breach of contract is not distinguished from an unintentional breach. *See, e.g., Stewart v.*

*Rudner,* 349 Mich. 459, 84 N.W.2d 816 (1957); *Caradonna v. Thorious,* 17 Mich.App. 41, 169 N.W.2d 179 (1969). *See generally,* 11 Williston on Contracts § 1340 (3d ed. 1968). There is considerable weight to the debtor's argument that the state court erred in granting exemplary damages for a breach of contract under Michigan law.

**10.** From its inception, national bankruptcy legislation has been geared to provide relief to the business debtor. Under the Bankruptcy Act of 1800, the only person who could become eligible for relief was a "merchant, or any other person . . . actually using the trade of merchandise." Bankruptcy Act of 1800, 6th Cong., 1st Sess. § 1 (April 4, 1800).

(1974); *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973). "A construction of a particular [section] that would destroy the consistency of the entire enactment is to be avoided." *In re Hobday*, 4 B.R. 417, 418, 6 B.C.D. 469, 2 C.B.C.2d 506 (Bkrtcy.N.D.Ohio 1980). *See also, Bailey v. United States*, 511 F.2d 540 (Ct.Cl.1975). To construe section 523(a)(6) as urged by Cadillac would do violence to this well-settled rule of construction.

An appropriate order to be submitted.