**In the Matter of Jerald Daemyon CLOYD, a/k/a Jerald Daemyon, Debtors,**

v.

**GRP RECORDS, Creditor.**

**Bankruptcy No. 98–52006.**
**Adversary No. 98–4707.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

June 18, 1999.

Nancy A. Nihem, Schneider, Miller & Lim, P.C., Detroit, MI.

Barbara Rom, Pepper Hamilton, LLP, Detroit, MI.

## MEMORANDUM OPINION AND ORDER GRANTING DEBTORS' MOTION TO DISMISS CREDITOR GRP'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

RAY REYNOLDS GRAVES,
Bankruptcy Judge.

### Introduction

This Court is presented with Debtor's motion to dismiss creditor GRP's complaint seeking declaratory and injunctive relief relative to its pending contract premised upon Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## Parties

- GRP Record, Inc.—a record company engaged in the business of commercially selling or otherwise distributing recorded music
- Cecas, Inc.—d/b/a Jazzestra Records, a Michigan corporation
- Jerald Daemyon Cloyd—Debtor and recording artist.
- Christina E. Cloyd—manager and Debtor's mother.

## Facts

The Debtor, Gerald Daemyon Cloyd is a jazz musician who was under an uncontested recording obligation to GRP Record, Inc. On September 19, 1995, Cecas entered into an agreement with GRP and, pursuant to certain written recording contracts, agreed to furnish to GRP the Debtor's exclusive recording artist services. Pursuant to the terms of the recording agreement, Cecas agreed to transfer and assign GRP ownership and all attendant rights in and to the master recordings by the Debtor.

The agreement between Cecas and GRP also granted GRP an irrevocable and exclusive license to exploit the musical compositions embodied in the master recordings delivered to GRP under the recording agreement. The Debtor's mother and manager, Christina E. Cloyd, was also a party to the recording agreement on behalf of Cecas.

GRP relies upon the terms of the recording agreement as the basis for declaratory and injunctive relief in Counts I and II of its complaint, and asks this Court to find that the agreement is not executory. This recording agreement was never signed by Cecas and/or the Debtor and was the subject of litigation in the United States District Court for the Eastern District of Michigan. The District Court did not decide whether or not Cecas or the Debtor were bound by the recording agreement, but dismissed the complaint on venue grounds.

The Debtor agrees, for the purposes of this motion, to assume that he was bound by the recording contract. Debtor readily admits that the contract was only partially performed as he only produced one album when two were required. The album, "Thinking About You" was an artistic and commercial success.[1]

## Procedural History

### Pre Bankruptcy Litigation

On December 5, 1997, the Debtor and Cecas filed a complaint against GRP and its parent corporation Universal Records, Inc. ("Universal") in the United States District Court for the Eastern District of Michigan.[2] The Debtor sought to have the recording agreement declared null & void. Universal and GRP filed a motion to dismiss the complaint due to:

1. Litigation in an improper form;
2. Inclusion of an improper plaintiff;
3. Inclusion of an improper Defendant; and
4. Preclusion based on the express terms of a recording agreement[3]

On June 15, 1998, the District Court granted GRP's and Universal's motion to dismiss. Shortly thereafter, on July 2, 1998, the Debtor filed this voluntary petition for relief under chapter 7 of the bankruptcy code. Charles Taunt was duly appointed the chapter 7 trustee.

The GRP contract was scheduled as an executory contract by the Debtor on schedule G of his petition. Pursuant to 11 U.S.C. § 365, the deadline for the Trustee,

---

1. Sold over 20,000 copies whereas in this genre an album that sells 40,000 is considered a hit. Therefore as a first endeavor, 20,000 is quite promising. (See Tr., Defendant's motion to dismiss for injunctive relief, 2/3/99 at 11).

2. Case No. 97–75979.

3. Debtor mistakenly listed Universal Studios, rather than Universal Records as a party defendant.

Mr. Taunt, to assume or reject GRP's contract was August 31, 1998. In an interesting twist, GRP, rather than the Trustee filed a motion to allow the trustee to assume or reject executory contracts for a period of 90 days. This court entered a Memorandum Opinion and Order Denying Creditor/Movant's Motion to Extend Time for the Trustee to Assume or Reject the Debtor's Executory Contract for 90 Days. In response to the court's memorandum opinion and order, GRP filed an Ex Parte Motion for a Bridge Order Extending Time for Trustee to Assume or Reject Executory Contracts or Unexpired Leases of Residential Real Property Through Conclusion of Hearing on Grp Records, Inc.'s Motion to Extend Time to Assume or Reject Executory Contracts for 90 Days. The ex parte motion asked the court to enter a "bridge" order granting the Trustee, not GRP, an additional 60 days to assume or reject the contract through the conclusion of the hearing on GRP's motion. This court denied GRP's motion for bridge order on August 28, 1998.

On October 5, 1998, GRP filed a complaint for declaratory and injunctive relief including a determination of non-dischargeability of debts. The Debtor asks this Court to dismiss GRP's complaint and Debtor requests dismissal of each count for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). The following counts are at issue:

## Count I & II

GRP's complaint asks this Court for entry of an order declaring that the recording agreement is a personal services contract and therefore is not property of the estate pursuant to 11 U.S.C. § 541 and not subject to rejection pursuant to 11 U.S.C. § 365. Alternatively, GRP asks this Court, to permanently enjoin the Debtor from performing and or composing new music for any other person or entity other than GRP.

## Count III

GRP asks the Court to find that the filing of this bankruptcy petition consti-

tutes a willful and malicious injury in accordance with 11 U.S.C. § 523(a)(6).

## Count IV

GRP seeks a denial of Debtor's discharge pursuant to 11 U.S.C. § 723.

### *Discussion*

GRP's complaint, contrary to its prior motion to allow the trustee to assume or reject debtor's executory contract, now asserts that the recording agreement is not an executory contract, but rather, is a personal service contract that is not property of the estate pursuant to 11 U.S.C. § 541(a). Therefore, GRP argues this contract cannot be rejected pursuant to 11 U.S.C. § 365. GRP requests entry of a declaratory judgment to that effect. Count I of GRP's complaint represents an interesting change in the development of events. GRP makes the argument today that the contract is not executory, but on the eve of the expiration of the contract, GRP argued the Trustee's right to assume or reject the very same "executory" contract. This Court examines the contract and the current case law to determine if the contract at issue is indeed executory and, thus, subject to 11 U.S.C. § 365.

### I.

### *Executory Contract*

Executory contracts are governed by 11 U.S.C. § 365 of the Bankruptcy Code. 11 U.S.C. § 365(d)(1) of the bankruptcy code allows for the assumption or rejection of an executory contract. 11 U.S.C. § 365(d)(1) states:

> In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or if personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60 day period, fixes, then such contract or lease is deemed rejected.

■ Because executory is not specifically defined in the Code, trustees and courts must make a determination on a case-by-case basis. Congress declined to specifically define "executory contract" in its belief that the general meaning of the term was well understood and in order to avoid misinterpretation. Congress felt that more specific language might result in unintended omissions or inclusions. *In re Cardinal Industries, Inc.,* 146 B.R. 720 (Bankr.S.D.Ohio 1992), *(citing In re Sun City Investments, Inc.,* 89 B.R. 245 (Bankr.M.D.Fla.1988)) *(citing H.R. Doc. Nos. 137, 93 Cong., 1st Sess. 199) (Part I ('973') (Report on Commission Bankruptcy Laws)).*

■ The legislative history of the 1978 Code acknowledging that no specific definition of executory contract existed, made the following observation: There is no precise definition of which contracts are executory. Generally included are contracts on which performance remains due to some extent on both sides. *H.R. Rep. No. 595, 95th Cong., 1st Sess. 347 (1977), U.S.Code Cong. & Admin.News p. 5963, 6303.* The Sixth Circuit, adopting the same view, defined an executory contract as a contract which involves obligations which continue into the future. Generally, they are agreements which include an obligation for the debtor to do something in the future. *Sloan v. Hicks,* 761 F.2d 319 (6th Cir.1985) *cert. denied,* 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985). Although this court did not previously rule on whether the contract at issue in this case is executory and thus subject to rejection, this court implicitly declared that in some instances personal service contracts have been found to be executory.[4]

The Sixth Circuit's definition of an executory contract was adopted in the factually similar case of *In re Taylor,* 91 B.R. 302 (Bkrtcy.D.N.J.1988), *Delightful Music Ltd. v. Taylor,* 913 F.2d 102 (3rd Cir.1990). In *Taylor,* the debtor, James Taylor, the lead singer of the rock music group professionally known as Kool & The Gang, filed a voluntary chapter 11 petition. Shortly after the filing, Taylor filed a motion for authority to reject a recording agreement with PolyGram Records ("PolyGram"), a publishing agreement with Delightful Music, Ltd., (herein after "Delightful"), and a co-publishing agreement with PolyGram. In response to the debtor's motion, Poly-Gram & Delightful filed a cross-motion seeking dismissal of Taylor's chapter 11 petition alleging bad faith, or in the alternative, abstention by the bankruptcy court from hearing the debtor's motion to reject in accordance with 11 U.S.C. § 365 of the Bankruptcy Code.

The issue before the *Taylor* court was whether the debtor's executory personal service contract could be rejected in the bankruptcy proceeding pursuant to 11 U.S.C. § 365. Although PolyGram and Delightful argued that the debtor was not entitled to reject the personal service contract because the contract was not property of the estate pursuant to 11 U.S.C. 541(a), the court held that the contract was indeed executory and subject to assumption or rejection by the debtor. On appeal, the Third Circuit, in affirming the decisions of the bankruptcy and district court, held that § 365 applies to personal service contracts. In reaching its conclusion, the court looked at the plain meaning of the statute, and that while § 365(a) permits a trustee to assume or reject any executory contract, § 365(c) limits a trustee's ability to assume or assign an executory contract for personal service unless the signatory to the contract consents. *Id.,* at 106.

The Taylor court reasoned that personal service contracts are executory contracts and differ from other executory contacts only because. the consent of the parties is required before the trustee may assume the contract. *Id.*

---

4. Memorandum Opinion and Order Denying Creditor/Movant's Motion to Extend Time for the Trustee to Assume or Reject the Debtor's Executory Contract for 90 Days (8/28/98).

## A. Are Personal Service Contracts Property of the Estate?

█ Appellants in *Taylor* argued that the § 365 application was incorrect because pursuant to 11 U.S.C. § 541(a)(6) makes proceeds of the debtor's post-petition personal services not property of the estate, thus making the personal services contract, itself, not property of the estate. The appellants argued that since the executory contract for the debtor's personal services is not part of the estate, the trustee is powerless to negotiate the contract. The *Taylor* court carefully analyzed the issue of whether a personal services contract is property of the estate and the attenuating affects. It is this Court's view that the *Taylor* court correctly held that the appropriate question is not whether the contract is property of the estate but rather, whether or not there are rights and obligations owed by the parties after the petition is filed. The *Taylor* court stated:

> [t]he issue of affirmance or rejection relates only to these aspects of the contract which remained unfulfilled as of the date the petition was filed. It serves no useful purpose to speak generally about whether the contract becomes part of the estate. The real question is the status of the reciprocal rights and obligations of the contracting parties arising after the petition is filed. *Id.* at 106.

The court held that the only distinguishing fact from other executory contracts of a personal service contract is that the trustee lacks the ability to assume personal service contracts without the parties' consent.

## B. Does the Exclusivity Provision Survive Rejection?

Plaintiff argues that even if this Court finds that the recording contract is an executory contract and, thus, subject to rejection pursuant to 11 U.S.C. § 365(n)(1) that any such rejection would not preclude enforcement of the exclusivity provisions. In support of this contention, GRP cites a number of cases that stand for the proposition that rejection of a contract does not remove either the contractual obligation to perform or the claim for a breach of contract upon rejection.[5] Those cases do not require enforcement of a recording agreement in the face of rejection.

█ The "exclusivity" provisions of the recording contract are embodied within the contract and, as such, are subject to § 365. GRP argues that the Debtor and Cecas promised that they would not allow any other party to use or exploit any record embodying a composition recorded by the Debtor. The Debtor's promise, however, falls within the definition of executory. The Debtor's promise is memorialized in the recording contract as a future promise that remains unperformed and is deemed executory in nature and subject to rejection.

GRP takes the leap to infer that because a cause of action may constitute a breach that rejection does not relieve the debtor of his personal obligations. In its quest to prevent Debtor from pursuing his career by rejection of the recording contract, GRP suggests that the debtor may only receive relief by obtaining a discharge pursuant to 11 U.S.C. § 727 rather than rejection of the agreement. To prove its point, GRP attempts to liken this case to a line of cases that embrace the notion that covenants not to compete are not dischargeable[6]. This line of cases are not like the

5. *In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 687, 703 (Bankr.S.D.N.Y.1992); *In re Austin Dev. Co.,* 19 F.3d 1077, 1082–83 (5th Cir.1994) (a lease of non-residential real property that was deemed rejected pursuant to 11 U.S.C. § 365(d)(4) is considered breached, not terminated); *In re West Chestnut Realty of Haverford, Inc.,* 177 B.R. 501, 506 (Bankr. E.D.Pa.1995); *In re Kilpatrick,* 160 B.R. 560, 567 (Bankr.E.D.Mich.1993).

6. *In re Udell,* 18 F.3d 403, 406–10 (7th Cir. 1994) noting that rights to enforce restrictive covenants are not properly classified as "claims" in bankruptcy; *In re Printronics, Inc.,* 189 B.R. 995, 1000–01 (Bkrtcy.N.D.Fla.

case at bar, as the instant case involves the rights to intellectual property.

■ Apparently, GRP's reliance upon § 365(n)(1) prompts the request to compel specific performance by the Debtor. While § 365(n)(1) refers to "intellectual property", clearly, the Debtor is not the property of GRP. Intellectual property, as defined in § 101 of the Code is: (1) trade secret; (2) invention process, design, or plant protected under Title 35 of the United States Code; (3) patent application; (4) plant variety; (5) work of authorship protected under Title 17 of the United States Code. This court cannot extend the definition of intellectual property to include an individual. The very essence of the Debtor's means of existence is tied to his ability to perform.

■ The limitation of the trustee's ability to enforce personal service contracts was incorporated under § 365 as a means of protecting debtors against involuntary servitude which is expressly prohibited by the 13th Amendment to the Constitution of the United States. *Taylor,* at 117. The Debtor in this case argues that forcing him to perform for GRP would be tantamount to forcing him into involuntary servitude contrary to the dictates of *In re Noonan,* 17 B.R. 793 (Bankr.S.D.N.Y.1982), which prohibits forcing a debtor to work for a particular company as being violative of the 13th Amendment. Although Debtor's vision of events is dramatic, requiring the Debtor to complete performance of his contract with GRP does, indeed, defeat the Code's purpose of granting the debtor "a fresh start."

■ The Sixth Circuit recognized the importance of providing a debtor's fresh start in formulating its definition of "executory contract." The importance of beginning anew, minus burdensome contracts, as an essential objective of 11 U.S.C. § 365 was previously discussed in *In re Monument Record Corporation,* 61 B.R. 866 (Bkrtcy.M.D.Tenn.1986), *citing In re Jolly,*

1995) covenant not to compete is not dis-

574 F.2d 349 (6th Cir.1978) *cert. denied* 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978). In it analysis, the Court examined the Sixth Circuit's definition of executory contract as espoused in *Jolly,* 574 F.2d at 351 and looked at the purpose behind rejection. Relieving the estate of burdensome contracts is one of the reasons a debtor is permitted the opportunity to reject executory contracts. *Id.* at 868. The Debtor in this case must be accorded the rights inherent in the Bankruptcy Code and granted a fresh start. Accordingly, Count I of Plaintiff's complaint is dismissed. The Debtor's fundamental right to perform, earn a living, and to be accorded a fresh start was contemplated by the Bankruptcy Code and must be upheld.

## II.

### Restraining Order and/or Injunctive Relief

GRP requests a restraining order and/or an injunction based upon breach of contract and breach of the exclusivity provisions, and GRP's alleged right to enforce 11 U.S.C. § 365(n)(1)(B). 11 U.S.C. § 365(n)(1)(B) states:

> If the trustee rejects and executory contract under which the debtor is a licensor of a right to intellectual property, the licensee under such contract may elect—
>
> (B) to retain its rights (including a right to enforce any exclusivity provision of such contract, but excluding any other right under applicable nonbankruptcy law to specific performance of such contract) under such contract and under any agreement supplementary to such contract, to such intellectual property (including any embodiment of such intellectual property to the extent protected by applicable nonbankruptcy law), as such rights existed immediately before the case commenced, for
>
> (i) the duration of such contract; and

chargeable.

(ii) any period for which such contract may be extended by the licensee as of right under applicable nonbankruptcy law.

 The filing of a chapter 7 petition by the Debtor does not furnish an opportunity for GRP to obtain a restraining order and/or injunction to prevent the Debtor from breaching the GRP contract. Indeed, bankruptcy anticipates breach of contracts. A creditor's remedy as a result of breach is to file a claim against the debtor's estate for damages. In bankruptcy, a breach is not an event that triggers immediate reciprocal treatment. Moreover, it is well settled that a debt arising from a breach is dischargeable absent a showing that the purpose of the breach was to cause injury. *See, Matter of Haynes,* 19 B.R. 849 (Bkrtcy.E.D.Mich. 1982).

 GRP further argues that it is entitled to specific performance of the exclusivity provisions of the agreement against the Debtor pursuant to § 365(n). In support of its request, GRP argues that it will suffer interference with its business, loss of goodwill, irreparable injury and the loss of business. GRP's suppositions are hollow and fail to state a reason grounded in law to support a request for a restraining order or injunctive relief. As previously discussed, a breach of contract is anticipated in a chapter 7 proceeding. Moreover, nothing in the Code requires the Debtor to involuntarily perform a burdensome contract. While it is uncontested that GRP has exclusive rights to "Thinking About You" to urge the prohibition against performance, other than for GRP is simply unconscionable. The Debtor has every right to pursue his career as a performing artist. Congress did not require a debtor in bankruptcy to forfeit the means of earning a living. Indeed, Debtor's participation in the process allows a debtor to begin anew without the constraints of a burdensome contract. This Court does not have the power or inclination to enjoin the Debtor from future per-

formance. Accordingly, Court II of Debtor's complaint is dismissed.

## III.

### *Willful and Malicious Injury*

GRP asserts that this claim must be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6). This provision provides:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

for willful and malicious injury by the debtor to another entity or to the property of another entity.

 The section is designed for intentional or willful and malicious conduct. Absent any showing of malice or contempt, a mere breach of contract is not a nondischargeable debt. If taken to its logical conclusion, GRP's novel assertion implies that all bankruptcy petitions could give rise to claims of willful and malicious injury, which is certainly a concept that is inconsistent with the Code. The filing of a bankruptcy petition was never contemplated as a basis to except a debt from discharge as a willful and malicious injury pursuant to 11 U.S.C. § 523(a)(6). Although the Code does not provide a definition for willful and malicious, it is agreed that in order to have a debt excepted from discharge pursuant to 11 U.S.C. § 523(a)(6) the creditor must establish that the debtor's act was both willful and malicious. *In re Nelson,* 35 B.R. 765 (Bkrtcy. N.D.Ill.1983).

 One line of cases focuses on "willfulness" and held that "willfulness could be established upon a finding of a reckless disregard of duty." *Harrison v. Donnelly,* 153 F.2d 588. *See also, Wheeler v. Laudani,* 783 F.2d 610 (6th Cir.1986). In the case at bar, the debtor has every right to file a bankruptcy petition and exercise whatever rights that may follow from the filing, including rejecting an executory

contract. The application of § 523(a)(6) for a breach of contract was previously addressed in *Matter of Haynes,* 19 B.R. 849 (Bankr.E.D.Mich.1982). The court, after carefully considering the aftermath and consequences of contractual breach of contracts and whether such breach is intentional or malicious at the time of filing, held that while the knowledge that injury may result, the nature of the injury is in large part foreseeable and assumed as part of the risk of doing business. Further, the court held that although the injury resulting from the breach is real, it is not malicious in the sense that it deserves exception from discharge. "The intentional breach is not of itself conduct covered by 11 U.S.C. § 523(a)(6)." *Haynes, supra* at 852.

Thus a breach of contract is not intended to be a debt that is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6). GRP's assertion that the Debtor's breach is intentional and thus grounds to except the debt from discharge is inconsistent with the provisions of the Code. Therefore, Count III of Plaintiff's complaint is dismissed.

### Count IV

### Denial of Discharge 11 U.S.C. § 727(a)(3)

Count IV of Plaintiff's complaint seeks an order declaring GRP's breach of contract claims, rejection claims, and GRP's alleged right to enforce the exclusivity provisions of the contract nondischargeable pursuant to 11 U.S.C. § 727. GRP's complaint is devoid of any specific provisions of § 727 for declaratory relief and is vague and ambiguous at best. The failure to delineate facts in support of its suppositions results in a failure to state a claim upon which relief can be granted and therefore its complaint seeking declaratory

relief pursuant to § 727 must be denied in accordance with F.R.Civ.P. 12(b)(6).

Similarly, GRP seeks a denial of the Debtor's discharge pursuant to § 727(a)(3) premised upon the allegations that the Debtor appeared at a 2004 examination and refused or was "unable to" produce certain documents relative to the recording agreement. In response to GRP's accusations, Debtor attempts to offer this court a plausible explanation of why certain documents were not presented.[7] This Court notes that as a result of Debtor's alleged failure to provide certain documents, that GRP filed a discovery motion, that was later withdrawn. There is nothing on the record to indicate that GRP sought further assistance of this Court to compel compliance. This Court was not engaged to assist GRP's request through a court order. Accordingly, the Debtor has not failed to comply with a discovery order of this Court. In order to justify denial of a debtor's discharge, the evidence must establish debtor's intent to hinder or delay creditor's collection of debt. *See, In re Edsel Adams and Frances T. Adams,* 31 F.3d 389 (6th Cir.1994). 11 U.S.C. § 727 is a remedy left to Debtors who have intentionally and continuously failed to comply with orders of the court. Such egregious behavior as contemplated by § 727(a)(3) is certainly not the pattern of behavior that has occurred in this case.

The question of venue was also raised as a final effort to persuade the Court to find some indicia of wrong doing by the Debtor. GRP argued that venue was improper as there was an article in a local Atlanta magazine, "Jezebel" (December, 1998), depicting Debtor as arguably a resident of Atlanta.[8] This Court notes however, that the January, 1999 issue of "Hour" magazine, a Detroit publication

---

7. Debtor asserts that he produced the documents that were not subject to a pending motion objecting to the production of certain documents. Prior to the hearing on the discovery motion being heard, GRP withdrew its motion for discovery.

8. Debtor was named among the 50 most beautiful people in Atlanta.

**338**

also identified the Debtor arguably as a Detroit resident.

This Court does not assign value to either magazine to substantiate the Debtor's residence. This court is unpersuaded by anything in this record to suggest that the Debtor is not a resident of Detroit.

 Finally, GRP attempts to liken this case to *In re Carrere* 64 B.R. 156 (Bankr.C.D.Cal.1986) where the case was dismissed premised upon a bad faith filing. In *Carrere*, the admitted primary motivation for filing bankruptcy was to free the debtor from an acting contract so she could enter into a more lucrative one. In dismissing the case, the Court held that it would be inequitable to allow a greedy debtor to seek the equitable protection of the Court.

The Debtor in *Carrere* admitted that her sole purpose in filing for chapter 11 was to reject her contract with ABC in order to exercise a more lucrative contract with the "A Team." [9] It is clear that the *Carrere* court's decision was driven by the desire to prevent the debtor from switching TV shows. That just simply is not the case here.

GRP assures this Court that it need not concern itself with "thorny" issues of case law reconciliation to the extent that *In re Carrere* and *In re Taylor*, 913 F.2d 102, 107 (3rd Cir.1990) (distinguishing Carrere because of the bad faith suggested by the filing) conflict; however, as GRP so aptly points out, the distinguishing factor in *Carrere* is the apparent bad faith in filing for the sole purpose of rejecting a contract. In contrast to this case, a demonstration of bad faith simply has not been made.

 As this Court previously held in its memorandum opinion and order denying creditor movants motion to extend time for the trustee to assume or reject the debtors executory contract for 90 days, it is well established that when filing bankruptcy, that the Debtor has the presump-

tion of good faith. Again, this Court finds that GRP's allegations of bad faith are unsupported, speculative, and not persuasive. This Court will not disallow Debtor's right to a fresh start based upon unsupported speculative allegations of bad faith.

The decisions of bankruptcy courts in California, while entered by thoughtful and learned judicial colleagues, reflect, correctly, the intent of the California legislature to protect the recording and entertainment industry. The fact is, 11 U.S.C. § 365 allows the rejection of a personal service executory contract and this Court is not bound to follow the California trend, absent a Code provision affording special protection to such contracts.

Accordingly, all counts of Plaintiff, GRP's complaint are hereby dismissed for failure to state a case upon which relief may be granted in accordance with Fed. R.Civ.P. 12(b)(6).

**IT IS SO ORDERED.**

---

**9.** A popular television show.